*In re* THOMAS J. ROSARIO, querellado.

Número: O-82-468          Resuelto: 27 de junio de 1985

*Miguel Pagán, Procurador General Interino, Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Thomas J. Rosario, pro se.*

PER CURIAM: El Procurador General formuló querella contra el abogado Thomas J. Rosario concebida en los siguientes términos:

> El Lic. Thomas J. Rosario actuó en forma antiética en relación a su cliente la señora María N. Meléndez al no atender diligentemente el caso que ésta le encomendó y al no mantenerla informada sobre los asuntos que surgían en el desarrollo del caso. Los hechos que dan motivo al cargo son los siguientes: En síntesis la querellante contrató al querellado en agosto de 1978 para que le radicara una acción de daños y perjuicios; acordando que el abogado cobraría un por ciento de la sentencia. Que durante todo el tiempo desde la contratación del abogado ella estuvo en contacto con él y le suministró toda la información que él requería informándole el querellado siempre que [*sic*] "que todo va bien". Al perder comunicación con el abogado, la querellante visitó el tribunal para inquirir sobre su caso y allí se enteró de que el mismo había sido archivado desde el 30 de mayo de 1980. Dicha conducta viola los cánones 18 y 19 de los de Ética Profesional.

En su contestación el querellado alegó tener 29 años de edad y haber sido admitido al ejercicio de la abogacía en mayo de 1977. Desde entonces se dedicó a la práctica privada de dicha profesión, excepto por el período comprendido entre abril de 1981 y julio de 1982 en que ocupó el cargo de Vicepresidente y Jefe de la Oficina de Asuntos Legales y Relaciones Industriales de la Corporación de Crédito Agrícola del Departamento de Agricultura. Informó haber recibido numerosas distinciones públicas y haber ejercido varios cargos honoríficos en la comunidad, habiéndosele incluido en el 1979 en el Diccionario de Personalidades Puertorriqueñas de Hoy; que

ha sido autor de numerosos artículos de historia publicados en revistas, periódicos y libros; que tiene su bufete en Vega Baja y es miembro de la Iglesia Asamblea de Iglesias Pentecostales de Jesucristo. Señaló que fue miembro de la Delegación de Bayamón del Colegio de Abogados y miembro de la Comisión de la Revista del Colegio de Abogados. Negó las alegaciones esenciales de la querella, específicamente en cuanto a haber violado los Cánones de Ética Profesional.

■ Designamos Comisionado Especial al Lcdo. Martín Almodóvar Acevedo, ex juez del Tribunal Superior de Puerto Rico para oír y recibir las pruebas de las partes e informar a este Tribunal. Así lo hizo. En su informe concluyó como probados los siguientes hechos:

> El querellado Thomas J. Rosario fue admitido al ejercicio de la profesión de abogacía el 31 de mayo de 1977 y al notariado el 13 de junio del mismo año. Fue suspendido del ejercicio del notariado el 4 de febrero de 1982. Abrió su oficina de abogado en la calle José Julián Acosta de Vega Baja, P.R., donde se dedicaba a la práctica de su profesión en agosto de 1978.
>
> En esta fecha fue visitado por su cliente, la señora María N. Meléndez Adorno, quien contrató sus servicios para que hiciera una reclamación de daños y perjuicios, por daños sufridos por ésta. Le hizo una relación completa de los hechos y el querellado le ofreció su ayuda y que le cobraría honorarios a base de un por ciento de lo que se obtuviera por sentencia o transacción.
>
> El 9 de agosto de 1979 el querellado radicó una demanda bajo el número CS 79-3394 del Tribunal Superior de Puerto Rico, Sala de Arecibo, casi 12 meses después que ésta lo visitara y de la ocurrencia de los hechos.
>
> En el hecho segundo de la demanda se alega que el 10 de agosto de 1978, en horas de la tarde, la demandante María Meléndez Adorno se encontraba en el cuarto de baño de su residencia cuando sufrió un accidente como consecuencia directa de la negligencia de los demandados.
>
> En el párrafo cuarto se alega que la demandante sufrió una herida visible en el rostro y su hombro además de otras

lesiones que le ha ocasionado sufrimientos físicos y morales que deben ser compensados por los demandados y sus compañías aseguradoras desconocidas X, Y y Z.

En el párrafo quinto alega que la demandante no ha contribuido en forma alguna con la ocurrencia del daño y que el daño es responsabilidad absoluta de los demandados.

La demanda no expone ningún hecho atribuíble a ninguno de los demandados que pueda hacerlos responsables de daños.

Son demandados Masam Construction Corporation, Blanco Enterprises, la Corporación de Renovación Urbana y Vivienda y tres compañías aseguradoras desconocidas.

Desde la fecha de la radicación de la demanda hasta el 14 de marzo cuando se dictó la orden para mostrar causa por la cual no debía archivarse el caso, hasta el 30 de mayo de 1980 cuando se decretó el archivo final, no se había emplazado, ni se habían hecho gestiones de emplazamiento a Masam Construction Corporation, Blanco Enterprises, ni la Corporación de Renovación Urbana y Vivienda.

Desde agosto de 1978 cuando la querellante visitó al abogado querellado por primera vez con la reclamación de daños y perjuicios hasta cuando se decretó el archivo, transcurrieron 21 mes [*sic*]. Durante este período de tiempo el abogado de la demandante no hizo ni estudio de título, no emplazó a los demandados incluidos en la demanda, no incluyó al Banco de la Vivienda, quien según su declaración fue la entidad que vendió la propiedad a la demandante. No investigó con el Banco de la Vivienda quien era el contratista que había construído la casa, ni hizo investigación de clase alguna con la entidad conocida con el nombre de Farmer Homes.

Durante el período transcurrido no mantuvo comunicación con su cliente; a pesar de que alega desconocer su dirección, de su propio testimonio y el de la querellante surge que era el abogado de los padres y otros miembros de la familia de la querellante. Durante el tiempo transcurrido no hizo uso de ninguno de los medios garantizados por las Reglas de Procedimiento Civil para descubrimiento de prueba.

El 27 de enero de 1981 el querellado informó incorrectamente a su cliente que pronto se vería el caso; que el martes

tenía una conferencia con el Juez; que se preparara para poder enfrentarse a los abogados de la parte contraria porque estaban representados por un abogado grande de San Juan y había que trabajar duro para la demanda.

La demandante querellante trató en varias ocasiones de comunicarse con su abogado pero sus gestiones fueron infructuosas.

Finalmente, la señora María Meléndez Adorno se querelló en el Colegio de Abogados. Allí le sugirieron que fuera al Tribunal Superior de Puerto Rico, Sala de Arecibo, donde se enteró que el caso había sido archivado.

El querellado admite haber celebrado un contrato verbal de servicios profesionales con la querellante a base de representarla y cobrar por concepto de honorarios el por ciento máximo permitido por ley de lo que pudiera obtenerse por sentencia o transacción, más, la demandante querellante venía obligada a pagar todos los gastos que se incurrieran en el caso. Que el caso se archivó debido a que no se le pagaron sus gastos montantes a la suma de $61.00 y la imposibilidad de comunicarse con su cliente. Se comunicó en varias ocasiones por correo con la querellante y al no recibir contestación entendió que ella no tenía interés en el caso.

Al querellado se le imputa violar los Cánones 18 y 19 de Ética Profesional.

El Canon 18 en lo pertinente dispone:

"Competencia del abogado y consejo al cliente. Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

"Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable."

El Canon 19 lee como sigue:

"Información al cliente. El abogado debe mantener a su cliente siempre informado de todo asunto importante

que surja en el desarrollo del caso que le ha sido encomendado."

Entendemos que la falta de diligencia por parte del querellado se debió principalmente a su falta de experiencia profesional entonces. Fue admitido al ejercicio de la profesión en mayo de 1977 y los hechos ocurrieron en el período comprendido entre el 1978 y el 1980.

En cuanto al canon 19 no hay duda de que el querellado hizo algún tipo de gestión para comunicarse con su cliente pero no la tuvo siempre bien informada de los acontecimientos ocurridos en el desarrollo del caso que le había sido encomendado.

La explicación de que no había recibido compensación por los gastos no es excusa. Tampoco es excusa el que la corporación demandada no apareciera debidamente inscrita en el Registro de Corporaciones. El emplazamiento a cualquiera de los otros co-demandados hubiera demostrado diligencia o impedido el archivo del caso.

■ El querellado formuló comentarios a dicho informe que hemos considerado. No desvirtúan las conclusiones del Comisionado Especial que tienen amplio apoyo en la prueba desfilada ante él. Coincidimos en que la conducta del querellado estuvo reñida con los Cánones 18 y 19.

■ Aunque el Comisionado no se expresó en cuanto a la personalidad e historial del querellado informados por éste en su contestación a la querella, consideramos que son factores que deben pesar al evaluar su conducta y disponer la sanción disciplinaria que su caso amerite. Consideramos, además, que el proceder de la querellante fue en alguna medida responsable del poco interés del querellado en proseguir su caso, que aparentemente carecía de méritos substanciales.

■ De ordinario la conducta de un abogado que desatiende la encomienda de su cliente amerita cuando menos una suspensión del ejercicio de la abogacía. *Las circunstancias todas de este caso limitan nuestra sanción a una censura, conscientes de que el trámite de la querella y el tiempo trans-*

*currido deben haber hecho meditar profundamente al quere-
llado sobre los alcances de su actuación antiética y servirle
esta experiencia para ser más cuidadoso en el descargo de sus
responsabilidades profesionales futuras. Se dictará sentencia
de conformidad.*

El Juez Presidente Señor Trías Monge y el Juez Asociado
Señor Negrón García disintieron por estimar que la sanción
impuesta no es suficiente. El Juez Asociado Señor Rebollo
López disintió porque impondría una sanción económica.