per curiam:
A menos que la práctica del Dere-cho se atempere con una preocupa-ción genuina de servir el bien co-mún con una definición más profunda y abarcadora de la respon- *30 sabilidad social del abogado además de atender los intereses del cliente a quien represente, no será m[á]s que una herramienta para satisfacer in-tereses privados con preocupación principal en los márgenes de ganancia.
G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 (Núm. 4) Rev. Jur. U.P.R. 729, 801 (1999).
I
El Ledo. Luis A. Nieves Nieves fue admitido al ejercicio de la abogacía el 7 de julio de 1992 y al del notariado el 5 de julio de 1993. Fue suspendido de la práctica de la notaría mediante una opinión emitida por este Tribunal el 3 de julio de 2007. In re Nieves Nieves, 171 D.P.R. 843 (2007). Los hechos que originan esta querella surgen luego de que, en su desempeño como abogado, el licenciado Nieves Nieves acordara representar a la Sra. Claribel Collazo Rosado en el caso Claribel Collazo Rosado v. Universidad de Puerto Rico, KDP 1999-1062, que se presentó en junio de 1999, al amparo de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sees. 146-151). Mediante dicha demanda, la señora Collazo Rosado exigió el resarcimiento de los su-puestos daños y perjuicios ocasionados por la Universidad de Puerto Rico (U.P.R.) al no renovarle el contrato de empleo, luego de que trabajara para dicha institución por cuatro años.
El 22 de mayo de 2000 la U.P.R., por conducto de su representación legal, presentó una moción de desestima-ción en la que adujó que no procedía la desestimación del pleito por no aplicar a la U.P.R. la Ley Núm. 100, supra. La U.P.R. fundamentó su posición en que al ser ésta una cor-poración pública que no opera como empresa privada, *31 queda fuera del alcance de esta ley. Posteriormente, el 9 de junio de 2000 el Tribunal de Primera Instancia ordenó a todas las partes en el pleito que en diez días replicaran en torno a la moción de desestimación presentada. Debido a que el licenciado Nieves Nieves no cumplió con la orden del Tribunal de Primera Instancia dentro del término seña-lado, la representación legal de la U.P.R. requirió al tribunal que desestimara el pleito.
Así las cosas, en la vista de seguimiento celebrada el 8 de agosto de 2000, el tribunal concedió quince días adicio-nales al abogado Nieves Nieves para que replicara a la moción de desestimación de la U.P.R. Pasados más de dos meses desde que se celebró la vista de seguimiento, la U.P.R. repitió su solicitud de desestimación. La parte de-mandante —representada por el licenciado Nieves Nieves— contestó unos interrogatorios que se le cursaron fuera de término y, con ello, violó la orden que dictó en sala abierta el foro primario para que los contestara dos meses antes. (1)
El 25 de octubre de 2000 se celebró la Conferencia con Antelación a Juicio. Sin embargo, el letrado Nieves Nieves no ayudó a confeccionar el informe con antelación al juicio, no compareció a esta reunión ni excusó su incom-parecencia. El tribunal emitió una minuta en la que le re-quirió, entre otras cosas, que mostrara justa causa por la cual no debía ser sancionado por su incomparecencia a la conferencia pautada. Además, se le impuso una sanción económica de $100 a favor del Estado y una sanción adicio-nal de $100 a favor de la otra parte. Por último, el mismo día en que no se pudo celebrar la Conferencia con Antela-ción al Juicio, el Tribunal de Primera Instancia emitió una *32 orden para mostrar causa en la que concedió un término fatal de diez días para que el licenciado Nieves Nieves ex-presara por qué no se le debían imponer sanciones econó-micas adicionales a las ya impuestas.
A pesar del trámite largo y accidentado que tuvo este caso, el licenciado Nieves Nieves nunca presentó escrito alguno al Tribunal de Primera Instancia para defender los intereses de su cliente ni para cumplir con las órdenes de ese foro. En cambio, mantuvo un patrón de desdén e indi-ferencia que culminó en una sentencia desestimatoria de la acción el 10 de mayo de 2001.
Por este patrón de dejadez, la señora Collazo Rosado presentó una queja jurada el 24 de noviembre de 2007 en nuestra Secretaría. En ese documento relató que nunca fue notificada del trámite procesal del caso. De igual forma, señaló que no fue informada de la desestimación de su caso hasta el 2006.(2)
Por otro lado, la señora Collazo Rosado alegó que durante el proceso judicial, el abogado Nieves Nieves le informaba que el caso iba bien, que tenía un 95% de probabilidad de prevalecer y que la U.P.R. la reclutaría nuevamente, cosa que no sucedió. La señora Collazo Rosado indicó, además, que siempre estuvo dispuesta a negociar con la parte demandada, pero el abogado no quiso hacerlo y prohibió que ella se comunicara sobre los pormenores del caso con personas vinculadas a la U.P.R.
El licenciado Nieves Nieves contestó la queja el 25 de abril de 2008. Señaló que la razón por la cual no prosperó el caso fue porque la U.P.R. prevaleció cuando el tribunal acogió una moción de sentencia sumaria. Según el licen-ciado Nieves Nieves, a la señora Collazo Rosado se le noti-ficó la moción de sentencia sumaria, pero no se presentó a *33 su oficina hasta el 2006. Adujo, por otro lado, que nunca le infundió a su cliente esperanza alguna de que iba a preva-lecer en el pleito ni le prohibió negociar con la parte demandada.
La señora Collazo Rosado replicó a la contestación del querellado el 5 de septiembre de 2008. Indicó que le pagó $500 para los gastos iniciales. Se reafirmó en sus alegacio-nes originales y en que la desestimación del caso fue por la incomparecencia del querellado en más de tres ocasiones en las que fue citado por el Tribunal de Primera Instancia. Añadió que para el 2003, cuando ya el caso había sido des-estimado, el abogado le solicitó una evaluación siquiátrica que se usaría en el caso. La señora Collazo Rosado se so-metió a la evaluación siquiátrica y entregó a su abogado el informe con el resultado. Por último, informó que cuando se enteró de la desestimación, el abogado no le informó la razón por la cual el caso no prosperó y le habló de una apelación que estaría lista en treinta días.
Mediante una Resolución de 4 de junio de 2009, ordena-mos a la Procuradora General la presentación de la quere-lla formal con los cargos correspondientes para continuar con el procedimiento disciplinario. En la querella se le imputó al licenciado Nieves Nieves la violación de los Cánones 9, 12, 18, 19, 35 y 38 del Código Ética Profesional, 4 L.P.R.A. Ap. IX.
Al contestar la querella, el abogado Nieves Nieves, por conducto de su abogado, aceptó las infracciones de los Cánones 9, 12, 18, 19 y 38, mas no aceptó la infracción del Canon 35. Por esta razón designamos a la Leda. Crisanta González Seda como Comisionada Especial para que recibiera la prueba necesaria y rindiera el informe sobre los hechos en controversia.
Como consecuencia de lo anterior, la comisionada Gon-zález Seda celebró una vista evidenciaría y emitió su in-forme, en el que respondió negativamente a la única con-troversia planteada, a saber, la violación al Canon 35. Con *34 el beneficio del Informe de la Comisionada y de las comparecencias de la Procuradora General y del licenciado Nieves Nieves, procedemos a resolver.
II

Infracción del Canon 9

Según establece el Preámbulo de nuestro Código de Ética Profesional, 4 L.P.R.A. Ap. IX n., “es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía”, por lo que “[l]a consecución de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad”.
El Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, obliga al abogado a cumplir con su deber de atender pronta y diligentemente las órdenes del tribunal. Ordena, de igual forma, comparecer a los señalamientos notificados por el tribunal. Esto es corolario del respeto profundo que deben tener los abogados hacia el foro judicial. In re Otero Fernández, 145 D.P.R. 582 (1998).
El deber que nace al amparo del este Canon 9 se ex-tiende a todos los tribunales. En efecto, en In re Roídos Matos, 161 D.P.R. 373, 383 (2004), mencionamos lo siguiente:
Aunque el deber de respeto para con los tribunales que re-coge el Canon 9 lo hemos utilizado mayormente para sancio-nar la inatención de los abogados a requerimientos de este Tribunal dentro de procedimientos disciplinarios, de igual forma este postulado ético incluye indubitadamente el deber de todo profesional del derecho de atender con igual diligencia y seriedad las órdenes del Tribunal de Primera Instancia y del Tribunal [de] Apelaciones. (Escolio omitido.)
*35 De igual forma, hemos reiterado en innumerables oca-siones que “ 'la desatención a las órdenes emitidas por los tribunales de justicia constituye un grave insulto a la au-toridad de éstos, en directa violación al deber de la conducta exigida por el referido Canon [9]’ (Corchetes en el original.) Id., citando el texto no publicado de In re Quevedo Cordero, 147 D.P.R. Ap. (1999).
Un análisis del trámite procesal del caso que propició esta querella revela que el Ledo. Luis A. Nieves Nieves hizo caso omiso a varias órdenes del Tribunal de Primera Instancia que le requerían replicar a la moción de desesti-mación presentada por la U.P.R. Asimismo, el letrado Nieves Nieves no compareció a la vista de conferencia con an-telación al juicio ni confeccionó el informe correspondiente, lo que ocasionó la suspensión de la vista. Incluso, el Tribunal de Primera Instancia impuso sanciones económicas al abogado por no cumplir con los términos. La reiterada in-acción del abogado ocasionó la desestimación de la de-manda, como sanción por el incumplimiento con las órde-nes del tribunal. En definitiva, como confiesa el propio querellado, su actuación infringió el referido Canon 9.
III

Infracción del Canon 12

El Canon 12 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, impone al abogado el deber de tramitar las causas con puntualidad y diligencia. In re Vélez Lugo, 168 D.P.R. 492, 496 (2006). Asimismo, impone a los abogados la obligación de ser responsables en la tramitación de los casos que les son encomendados, para evitar que se entorpezca su resolución. In re López Montalvo, 173 D.P.R. 193 (2008).
Este canon dispone:

Canon 12. Puntualidad y tramitación de las causas

Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y *36 exacto en el trámite y presentación de sus causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razo-nes poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente. (Enfasis suplido.)
El abogado debe cumplir con la obligación que se esta-blece en el Canon 12 en todas las etapas de un litigio. In re Collazo I, 159 D.P.R. 141 (2003); In re Pagán Hernández, 141 D.P.R. 113 (1996). Conforme con lo anterior, se ha en-fatizado que los abogados deben la más estricta observan-cia a las órdenes judiciales. De otro modo, pueden quedar sujetos al rigor disciplinario. In re Collazo I, supra, pág. 148.
La continua desobediencia de las órdenes del tribunal demuestra una grave infracción a los principios básicos de ética profesional, que exigen el mayor respeto hacia los tribunales. In re Collazo I, supra, pág. 149. El comportamiento de todo abogado “ ‘no debe ser otro que el fiel cumplimiento de la ley y el respeto al poder judicial’ ”. In re Díaz Alonso, Jr, 115 D.P.R. 755, 762 (1984). La incomparecencia injustificada a las vistas señaladas por el tribunal que ocasione la suspensión y, peor aún, la desestimación de la acción judicial es una violación patente del Canon 12 del Código de Etica Judicial, supra. In re López Montalvo, supra; In re Rosado Nieves, 159 D.P.R. 746 (2003).
La falta de diligencia del licenciado Nieves Nieves en la tramitación del caso se manifestó al no oponerse este a una moción de desestimación, al no comparecer a una vista y, por último, al incurrir en dilaciones indebidas, motivadas por el incumplimiento con varias órdenes emitidas por el Tribunal de Primera Instancia. Al así actuar —como tam-bién admite el propio querellado— incurrió en una viola-ción al Canon 12, supra.
*37 IV

Infracción del Canon 18

El Canon 18 (4 L.P.R.A. Ap. IX) establece, en parte:

Canon 18. Competencia del abogado y consejo al cliente

Será impropio de un abogado asumir una representación profesional cuando está [sic] consciente de que no puede ren-dir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazo-nables a su cliente o a la administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí-dica en general estima adecuada y responsable. (Enfasis suplido.)
Más aún,
[e]l Canon 18 del Código de Etica Profesional, ante, exige a todo abogado el deber de desempeñarse de forma capaz y dili-gente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad, y actuando de aquella forma que la profesión jurídica en general estima ade-cuada y responsable. Así el abogado debe emplear la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez. In re Cuevas Velázquez, 174 D.P.R. 433, 442 (2008).
“Así también hemos sostenido, sin ambages, que aquella actuación negligente que pueda conllevar, o que en efecto conlleve, la desestimación o el archivo de un caso, se configura violatoria del citado Canon 18.” In re Pujol Thompson, 171 D.P.R. 683, 689 (2007). “Y así debe ser, pues el deber de diligencia profesional del abogado es del todo incompatible con la desidia, despreocupación y displicencia.” íd.
Cuando se infringe el Canon 18, “el perjuicio directo lo padece la propia parte negligente no logrando la *38 concreción de lo pretendido”. R.L. Vigo, Ética del abogado: conducta procesal indebida, 2da ed., Buenos Aires, Ed. Lexis Nexis Abeledo-Perrot, 2003, pág. 103. Es decir, se afectan los intereses del cliente que el abogado negligente intenta defender. Es por esto que “[l]a ética profesional ... exige al abogado que conozca las normas jurídicas y actúe en consecuencia, y en la medida en que nos encontremos con una capacitación inadecuada o con una atención inde-bida a la causa encomendada, estaremos frente a una falta a aquella ética”. Id.
Por otro lado, la diligencia “implica que el [abogado] realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia”. S. Steidel Figueroa, Ética y Responsabilidad del Abogado, San Juan, Pubs. J.T.S, 2010, pág. 179. En otras ocasiones hemos discutido situaciones prácticas que plantean una violación al deber de diligencia que impone el Canon 18. Entre estas, cabe destacar las siguientes:
1. No comparecer a los señalamientos del tribunal.
2. No contestar los interrogatorios sometidos.
3. No informar a las partes sobre la presentación de un perito.
4. Desatender o abandonar el caso.
5. Permitir que expire el término prescriptivo o jurisdic-cional de una acción.
6. Cualquier tipo de actuación negligente que pueda conllevar o, en efecto, resulte en la desestimación o archivo del caso. In re Vilches López, 170 D.P.R. 793, 798 (2007).
El licenciado Nieves Nieves, al representar a la señora Collazo Rosado, tenía el deber insoslayable de proteger los intereses de ésta y desempeñarse a la altura que requiere la profesión legal. La desatención del letrado querellado a las múltiples órdenes que emitió el Tribunal de Primera Instancia, su incomparecencia al señalamiento de vista so-bre conferencia con antelación al juicio y no preparar el *39 informe relacionado, además de no oponerse a una moción de desestimación de la acción de su representada, la se-ñora Collazo Rosado, constituye una violación del Canon 18 del Código de Etica Profesional, como acepta cándida-mente el licenciado Nieves Nieves.
V

Infracción al Canon 19

El Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, impone a todo abogado el deber de mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que se le ha encomendado. Esto significa que todo abogado está obligado a informar a sus clientes sobre las gestiones realizadas para la tramitación de la causa de acción para la que fue contratado. In re García Ortiz, 176 D.P.R. 123 (2009). El deber de informar al cliente es un elemento imprescindible de la relación fiduciaria del abogado y el cliente. Por eso, la actuación de un abogado de mantener ajeno a su cliente de las incidencias de su caso lesiona el Canon 19 del Código de Ética Profesional, supra, y al proceso general de impartir justicia. In re Rosario, 116 D.P.R. 462 (1985); In re Cardona Vázquez, 108 D.P.R. 6 (1978).
El abogado que acepta un caso y no demuestra la competencia y diligencia que exige el ejercicio de la abogacía, y que no mantiene al cliente informado de todo asunto importante que surja en el desarrollo del caso, viola lo dispuesto tanto en el Canon 18 como en el Canon 19. In re Rosario, supra.
Al examinar el derecho comparado, notamos que la Re-gla 1.4 de Conducta Profesional de la American Bar Association impone al profesional del Derecho —al igual que lo hace nuestro Código de Ética Profesional— la tarea de *40 mantener al cliente informado del estatus del caso.(3) De esta forma, al mantener comunicación constante y regular con el cliente, se minimizan las ocasiones en que éste tiene que recurrir al abogado a buscar información sobre su caso. A.B.A., op. cit, pág. 18.
Hemos expresado, además, que un abogado no sólo debe representar a su cliente con fidelidad, lealtad y diligencia, sino que debe mantenerlo informado de todo asunto impor-tante que surja en el desarrollo del caso cuya atención le ha sido encomendada. In re Cardona Vázquez, supra, págs. 17-18. Es por eso que la comunicación con el cliente sobre fases importantes de los asuntos que atiende el abogado debe ser directa y efectiva. In re Maduro Classen, 137 D.P.R. 426 (1994).
Resulta menester aclarar que el Canon 19 impone el deber de comunicación al abogado y no al cliente. Es decir, el abogado que no informa al cliente los asuntos importantes del caso porque el cliente se tomó inaccesible, no evade su responsabilidad. En ese caso es necesario que el abogado indique las gestiones que realizó para comunicarse con su cliente.
El letrado querellado admitió que informó a la señora *41 Collazo Rosado en el 2006 de la sentencia emitida en el 2001. Es decir, informó a la cliente que su caso había sido desestimado cuatro años después de que se dictó sentencia. De la respuesta a la querella presentada por el licenciado Nieves Nieves se puede colegir que este insinúa que no tuvo contacto con la cliente desde que la acción se desestimó. No obstante, el letrado no indicó qué gestión, si alguna, realizó para notificar a su cliente el resultado ad-verso del pleito. En cambio, la señora Collazo Rosado afirmó reiteradamente que existía una comunicación fre-cuente entre ella y el letrado. Sin embargo, no fue hasta el 2006 que se le informó de la desestimación del caso, lo que aceptó el licenciado Nieves Nieves y lo que sin duda cons-tituye una violación del Canon 19.
VI

Infracción del Canon 35

El Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece, en lo pertinente, que la conducta de cualquier miembro de la profesión legal ante los tribunales, hacia sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. Allí se dispone que no es sincero ni honrado utilizar medios que sean inconsecuentes con la verdad y que no se debe inducir al juzgador a error mediante la utilización de artificios o de una falsa relación de hechos o del Derecho. In re Zapata Torres, 176 D.P.R. 545 (2009).
Hemos enfatizado que todo miembro de la profesión legal debe cumplir con los deberes de sinceridad, exaltación del honor y dignidad de la profesión. En virtud de ello, el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon. No es defensa, en estos casos, que no se haya obrado de mala fe, delibera- *42 damente o sin la intención de engañar, como tampoco lo es que no se haya causado daño a un tercero. In re Astacio Caraballo, 149 D.P.R. 790, 799 (1999).
Como se deduce del primer párrafo del Canon 35, supra, la conducta de sinceridad y honradez que debe desplegar todo abogado en su desempeño se exige en todo momento y ante todos. En otras palabras, estas normas mínimas se exigen frente a todos: clientes, compañeros abogados y tribunales. Todo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales. In re Irrizary Vega, 176 D.P.R. 241 (2009).
La infracción del Canon 35 fue el único cargo que no aceptó el licenciado Nieves Nieves. Señaló que al momento de contestar la queja no tenía el expediente del caso con-sigo y no recordaba la naturaleza de la moción, aunque sí sabía que el caso fue desestimado. Indicó, además, que por esa razón utilizó un término incorrecto al referirse a la moción de desestimación, pero que se trató de un error de buena fe.
De igual modo, la Comisionada Especial señaló que aunque el licenciado Nieves Nieves no se ajustó a la verdad en su contestación a la queja, no hubo intención específica de mentir. A renglón seguido, añadió que no se presentó prueba clara robusta y convincente para disciplinar al abogado. No estamos de acuerdo con la apreciación de la Comisionada Especial. Concluimos que el querellado efec-tivamente incurrió en una violación del Canon 35 del Código de Etica Profesional, supra.
Resulta menester, para fines de este análisis, diferenciar el grado de prueba requerido en acciones disciplinarias contra abogados, del elemento subjetivo requerido *43 para que se configure una infracción del Código de Ética Profesional. En In re Caratini Alvarado, 153 D.P.R. 575, 584 (2001), resolvimos que el grado de prueba requerido para disciplinar a un abogado es el de prueba clara, ro-busta y convincente. Esto obedece a que “[e]n casos disci-plinarios contra miembros del foro está [en controversia] el derecho de éstos a ganarse el sustento como abogados”. (Énfasis en el original.) Id., pág. 585.
Por otro lado, es inmaterial si se obró de mala fe, deliberadamente o con la intención de engañar. Lo fundamental para que se configure una infracción al Canon 35 es que se falte a los valores de honradez y veracidad, pilares de la profesión legal.
En su contestación, el licenciado Nieves Nieves informó que la acción de la señora Collazo Rosado no prosperó por razón de una moción de sentencia sumaria de la U.P.R. La realidad es que no prosperó debido a una moción de deses-timación que se declaró “con lugar”. La Comisionada im-puta ese error a un desliz de buena fe. No estamos de acuerdo con el criterio de la Comisionada Especial.
Una lectura objetiva de la contestación del querellado denota un intento de zafarse de la querella mediante la táctica de argumentar que el caso no prosperó por razón de una moción de sentencia sumaria y no por una moción de desestimación a la cual no se opuso cuando debió hacerlo. De hecho, el licenciado Nieves Nieves expuso en su contestación a la queja inicial que “[c]uando un abogado comparece a repr[esen]tar a un cliente, si tiene éxito es felicitado. Si fracasa en su empeño, presentan querellas frívolas como ésta”. (Énfasis suplido.) Anejo II, pág. 3. La aseveración antes citada demuestra que el error del letrado Nieves Nieves no fue de buena fe y que, en cambio, lo que buscaba era presentar un panorama incorrecto sobre el asunto en cues-tión con el propósito de no enfrentar la queja. Es decir, el licenciado Nieves Nieves adujo que la razón para la deses- *44 timación del pleito fue que el caso se resolvió en los méritos. No obstante, los hechos revelan que se desestimó por la negligencia del licenciado Nieves Nieves en el ma-nejo del caso y que el tribunal nunca entró a resolver los méritos de la acción.
De igual forma, en la contestación a la querella inicial de la señora Collazo Rosado, el licenciado Nieves Nieves no aceptó las imputaciones que ésta señaló, y no fue hasta que se presentó la querella formal por la Procuradora General, que el abogado aceptó la infracción de los Cánones 9, 12, 18, 19 y 38 del Código de Etica Profesional, supra.
En suma, la prueba que obra en el expediente y la cual se ha discutido demuestra que el letrado no mencionó en su contestación a la querella que nunca presentó un escrito en oposición a la moción de desestimación, a pesar de que el tribunal se lo requirió. Tampoco señaló que incumplió con varias órdenes del tribunal. Igualmente, adujo que la razón por la cual el caso no prosperó fue en los méritos, por una moción de sentencia sumaria, cuando la realidad es que el caso no prosperó por una moción de desestimación a la cual el abogado nunca se opuso en representación de su cliente. Al así actuar, el abogado Nieves Nieves faltó al deber de sinceridad y honradez que le impone el Canon 35.
VII

Infracción del Canon 38

El Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, esboza lo siguiente:

Canon 38. Preservación del honor y dignidad de la profesión

El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en *45 hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. ...
Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida pri-vada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos adminis-trativos. ... (Énfasis suplido.)
La responsabilidad moral y ética que rige nuestra profesión obliga a todo abogado a examinar su comportamiento continuamente. In re Rodríguez Vázquez, 176 D.P.R. 168 (2009). En ese contexto, hemos insistido en que los abogados son el espejo donde se refleja la imagen de la profesión. Por tal razón, estos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. In re Cuyar Férnandez, 163 D.P.R. 113, 117 (2004). De la misma forma,
[e]n innumerables ocasiones hemos señalado que los abogados son funcionarios del Tribunal y ministros ordenados de la jus-ticia y, como tales, sus actuaciones deben estar encaminadas a mantener un orden jurídico íntegro y eficaz, “ ‘orientado esen-cialmente por los principios de vida democrática y de respeto a la inviolable dignidad del ser humano’ ”. Id.
Surge del los autos del caso que el abogado Nieves Nieves nunca contestó la moción de desestimación que pre-sentó la parte demandada. Además, contestó el descubri-miento de prueba que le fue notificado por la parte demandada fuera del término que estableció el Tribunal de Primera Instancia, a pesar de que se emitieron varias ór-denes al respecto. Es necesario puntualizar que el licen-ciado no compareció ante la vista con antelación al juicio y que faltó a su deber de reunirse con la parte contraria para confeccionar el informe de conferencia con antelación al juicio.
*46 Todo este conjunto de incompetencia desembocó en la desestimación, con perjuicio, de la demandada en el caso Claribel Collazo Rosado v. Universidad de Puerto Rico, KDP 1999-1062. El desempeño demostrado por el letrado querellado manifiesta falta de responsabilidad y conducta impropia de su parte. La actuación antes descrita en nada promueve la sana administración de la justicia, propósito de umbral del Canon 38. Es por esto que el propio licen-ciado Nieves Nieves acepta que infringió este canon.
VIII
Resta ahora determinar la sanción que debemos imponer al querellado. Para imponer una sanción disciplinaria a un abogado por conducta impropia, es necesario considerar el historial previo del abogado; si éste goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si su conducta se realizó con ánimo de lucro, y cualquier otro factor pertinente a los hechos. In re Rodríguez Lugo, 175 D.P.R. 1023 (2009); In re Díaz Ortiz, 150 D.P.R. 418 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).
En In re De León Rodríguez, 173 D.P.R. 80 (2008), disciplinamos a un abogado que hizo caso omiso, por meses, a las órdenes del foro de primera instancia. Las órdenes del Tribunal de Primera Instancia le requerían que replicara una moción presentada por la otra parte que aducía un emplazamiento defectuoso. Una vez compareció ante el foro de instancia, el letrado no evidenció el diligencia-miento del emplazamiento. Esto produjo que el foro prima-rio desestimara la acción. Esta actuación demostró que el abogado le faltó el respeto al tribunal, principio jurídico que protege el Canon 9 del Código de Ética profesional, supra. Además, el letrado se desentendió completamente del trámite del caso y no atendió con diligencia y puntua- *47 lidad su caso, lo que contraviene el Canon 12. Por esta actuación suspendimos al letrado De León Rodríguez por el término de seis meses.
Recientemente, en In re Santos Rivera, 172 D.P.R. 703 (2007), suspendimos por un mes a un abogado que no fue diligente en la representación de un caso de un cliente, retuvo indebidamente el expediente del litigio después de presentar su renuncia al tribunal correspondiente y, además, incumplió con el deber de todo abogado de brindar su dirección actualizada a nuestra Secretaría. Todo ello fue una clara violación al Canon 18 del Código de Etica Profesional, supra.
Por otro lado, en In re Hernández Pérez I, 169 D.P.R. 91 (2006), disciplinamos a un abogado por no mantener informados a sus clientes de la desestimación de su caso, lo que ocasionó que estos fueran demandados y recayera sentencia en su contra. En aquella ocasión, concluimos que el señor Hernández Pérez violó los Cánones 18, 19, 23 y 24, por lo que lo suspendimos del ejercicio de la abogacía por el término de un año.
Posteriormente, en In re Zapata Torres, supra, un abo-gado incurrió en una conducta que violaba el Canon 35, al proveer información falsa al tribunal sobre el emplaza-miento mediante edicto de la parte demandada. En aquella ocasión señalamos que la
... información que el querellado le ofreció al tribunal de ins-tancia de que había notificado el edicto y la demanda a la parte demandada sin acreditarlo como lo exige la regla y la no disponibilidad de dicha evidencia cuando el tribunal así lo so-licitó, para luego someter evidencia de una notificación tardía, son actuaciones que faltan a los deberes que impone el Canon 35 de Ética Profesional. In re Zapata Torres, supra, págs. 557-558.
Además de violar el Canon 35, encontramos que el abo-gado querellado quebrantó los Cánones 12 y 18. Por esta actuación, lo suspendimos por el término de dos meses.
*48 Finalmente, en In re Gordon Menéndez I, 171 D.P.R. 210 (2007), suspendimos por el término de dos meses al abo-gado querellado por violar el Canon 38. Mientras estaba suspendido de la abogacía, el letrado disciplinado actuó de manera tal que creó en la ciudadanía la impresión de que podía ejercer la profesión. Por entender que esa gestión del abogado constituía una apariencia de conducta impropia, ejercimos nuestra facultad disciplinaria en aras de preservar el honor y la dignidad de esta profesión.
En el caso que ahora nos ocupa se encuentran presentes ciertos atenuantes que conviene señalar. En primera instancia, el abogado aceptó la mayoría de las infracciones éticas. Unicamente cuestionó una. Hemos señalado que la aceptación de la falta constituye un atenuante a considerar, a la hora de sancionar a un abogado. In re Vilches López, 170 D.P.R. 793, 801 (2007).
Aunque el querellado señala en su contestación a la querella que el incidente es aislado, la realidad es que ya en una ocasión anterior este Tribunal disciplinó al letrado Nieves Nieves por su conducta como notario. Véase In re Nieves Nieves, supra. Separamos indefinidamente al abogado Nieves Nieves de la práctica de la notaría por unos errores crasos en su obra notarial. Esto es un agravante que debemos tomar en consideración.
Si analizamos los hechos de la querella, en unión a los hechos relatados en In re Nieves Nieves, supra, resulta for-zoso concluir que el licenciado Nieves Nieves refleja un pa-trón de incompetencia para practicar tanto la notaría como la abogacía.
Por otro lado, la señora Collazo Rosado y su esposo, el señor Rivera Díaz, suscribieron un acuerdo de transacción de responsabilidad civil bajo juramento, mediante el cual recibieron la cantidad de $15,000 del letrado Nieves Nieves, por los daños y perjuicios que éste pudo haber causado en su desempeño negligente. De este acuerdo se puede co- *49 legir que el abogado querellado indemnizó a su cliente, lo que constituye otro atenuante. In re Sepúlveda Girón, 155 D.P.R. 345, 363 (2001).
Considerado todo lo anterior, ordenamos la suspensión inmediata del Ledo. Luis Nieves Nieves de la práctica de la profesión por el término de un año. El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a éstos los expedientes de los casos pendientes, así como los hono-rarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta opinión y Sentencia.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió sin opinión escrita. El Juez Presidente Señor Hernán-dez Denton no intervino. La Jueza Asociada Señora Pabón Charneco impondría al abogado seis meses de suspensión.

 El 8 de agosto de 2000 el Tribunal de Primera Instancia concedió cinco días para que la parte demandante, es decir, la parte que representaba el licenciado Nieves Nieves, contestara unos interrogatorios cursados con anticipación. Sin embargo, no fue hasta el 2 de octubre de 2000, más de dos meses después, que se cumplió con esa orden.

 Se deduce del expediente que la orden para mostrar causa de 25 de octubre de 2000 fue notificada directamente a la señora Collazo Rosado por mandato de la juez, Hon. María del Carmen Gómez Córdova.

 La regla, en su totalidad, dispone de la forma siguiente:

“Rule 1.4 Communication

“(a) A lawyer shall:
“(1) promptly inform the client of any decision or circumstance with respect to which the clients informed, consent, as defined in Rule 1.0(e), is required by these Rules',
“(2) reasonably consult with the client about the means by which the clients objectives are to be accomplished',
“(3) keep the client reasonably informed about the status of the matter,
“(4) promptly comply with reasonable requests for information; and
“(5) consult with the client about any relevant limitation on the lawyer’s conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
“(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.” A.B.A., Model Rules of Professional Conduct, Center for Professional Responsibility, 2010, págs. 17-18.